IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THE SOLID WASTE DISPOSAL          *
AUTHORITY OF THE CITY OF          *
MOBILE, ALABAMA,                  *
                                  *
      Plaintiff,                  *
                                  *
vs.                               *    CIVIL ACTION NO. 18-00438-KD-B
                                  *
WM MOBILE BAY ENVIRONMENTAL       *
CENTER, INC., *et al.*,           *
                                  *
      Defendants.                 *

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Waste Away Group, Inc.'s motion to dismiss fraudulently-joined defendant (Doc. 2) and Plaintiff the Solid Waste Disposal Authority of the City of Mobile, Alabama's motion to remand. (Doc. 8). The motions, which have been fully briefed and are ripe for resolution, have been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Defendant Waste Away Group, Inc.'s motion to dismiss fraudulently-joined defendant (Doc. 2) be **DENIED**, that Plaintiff's motion to remand (Doc. 8) be **GRANTED**, and that this action be remanded to the state court where it was originally filed.

## I.  BACKGROUND

Plaintiff the Solid Waste Disposal Authority of the City of Mobile, Alabama (the "Authority") filed the instant lawsuit in the Circuit Court of Mobile County, Alabama on August 28, 2018.  (Doc. 1-1 at 2-7).  The Authority's complaint names as Defendants WM Mobile Bay Environmental Center, Inc. ("WM Mobile Bay") and Waste Away Group, Inc. ("Waste Away").  The Authority asserts claims for trespass, conversion, and nuisance against WM Mobile Bay, which operates the Chastang Landfill in Mobile County, Alabama, and against Waste Away, the lessee of the Chastang Landfill pursuant to a 2003 lease agreement with the Authority.  The Authority's claims stem from actions allegedly taken by Defendants with respect to the "West Tract," a tract of land that is owned by the Authority and borders the Chastang Landfill, but, according to the Authority, is not a part of the landfill.  Specifically, the Authority alleges that both Defendants trespassed upon the West Tract by physical ingress and egress of persons and equipment across the property line between the Chastang Landfill and the West Tract, and by diverting water onto the West Tract.  The Authority further asserts that Defendants have converted large volumes of cover dirt and timber from the West Tract for their own use, and that Defendants' activities have interfered with the Authority's use and possession of the West Tract, amounting to a nuisance.

Defendants WM Mobile Bay and Waste Away removed the action to

this Court on October 11, 2018. (Doc. 1). In their notice of removal, Defendants assert the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Id. at 1). According to Defendants, the Authority and Waste Away are both Alabama corporations and, as such, are residents of Alabama, and WM Mobile Bay is a foreign corporation, which is incorporated in the state of Delaware and has its principal place of business in Mississippi. (Id. at 1-2). Defendants assert that although both the Authority and Waste Away are Alabama corporations, Waste Away has been fraudulently joined in this action in an effort to defeat diversity jurisdiction. (Id.). Defendants thus argue that the Court should disregard Waste Away's Alabama citizenship in determining whether complete diversity of citizenship exists between the parties. (Id. at 5-6). Specifically, Defendants contend that "not one of Plaintiff's factual allegations involves any conduct of Waste Away" because Waste Away is not the operator of the Chastang Landfill. (Id. at 6, 8-9). Defendants further argue that although Plaintiff's complaint alleges the existence of a lease agreement between the Authority and Waste Away, the complaint does not "allege any act which Waste Away has done to cause or contribute to the tortious conduct alleged in the Complaint." (Id. at 6).

Waste Away filed its motion to dismiss fraudulently-joined defendant on October 18, 2018. (Doc. 2). In its motion, Waste Away argues that it was fraudulently joined because the Authority

has failed to state a viable cause of action against it. (Id. at 4). Waste Away also contends that it has been fraudulently misjoined in this action because there is no common question of law or fact that connects the Authority's claims against WM Mobile Bay with the Authority's claims against Waste Away. (Id. at 6-7).

Subsequent thereto, the Authority filed the instant motion to remand this case to state court. (Doc. 8). In its motion, the Authority notes that its complaint alleges that both Waste Away and WM Mobile Bay have their principal places of business in Alabama, and it contends that Defendants have not offered any evidence refuting those allegations. (Id. at 4-5). The Authority also contends that it will be able to establish that its claims against Waste Away are valid, and that it will be able to recover from Waste Away for its tortious conduct. (Id. at 4). In support of its assertions, the Authority cites to provisions from its 2003 lease agreement with Waste Away, including recitals that Waste Away is the operator of the Chastang landfill as successor to the 1993 Transamerican contract, and to other provisions charging Waste Away with making various improvements to the landfill. (Id. at 6). The Authority asserts that it "is also possible that Waste Away is the real party in interest with respect to WM Mobile Bay, and actually controls, manages and provides support for WM Mobile Bay's activities at the Chastang Landfill." (Id.). The Authority

further argues that it is an arm of the state of Alabama and not subject to the jurisdiction of this Court pursuant to the Eleventh Amendment.  (Id. at 10-15).

In its response in opposition to the Authority's motion to remand, WM Mobile Bay contends that it has refuted the Authority's assertion that WM Mobile Bay's principal place of business is in Alabama.  (Doc. 11 at 3-5).  WM Mobile Bay points out that the notice of removal states that WM Mobile Bay's principal place of business is in Mississippi, and WM Mobile Bay asserts that this allegation is borne out by the affidavit of its vice president, David Myhan, submitted in conjunction with its response to the Authority's motion.  (Id. at 3-4).  WM Mobile Bay also asserts that its Mississippi citizenship has been conclusively established in prior litigation between the parties.  (Id. at 4).  WM Mobile Bay further notes that the Authority's own complaint asserts that WM Mobile Bay, and not Waste Away, is the successor in interest to Transamerican and currently operates the Chastang Landfill under the 1993 contract between the Authority and Transamerican.  (Id. at 3).  WM Mobile Bay claims that this Court, in another case, previously determined that Waste Away is not a party to that 1993 contract, "and thus has no operational involvement in the landfill."  (Id. at 6).  Finally, WM Mobile Bay argues that the Eleventh Amendment has no bearing on this case, since the Authority is the plaintiff and not a defendant.  (Id. at 8-9).

The sum of these pleadings is now before the Court for review.

## II.  **STANDARD OF REVIEW**

"A removing defendant bears the burden of proving proper federal jurisdiction." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) (quoting Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002)).  "Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court."  Adventure Outdoors, 552 F.3d at 1294. Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Furthermore, "once a federal court determines that is without subject matter jurisdiction, the court is powerless to continue." Univ. of S. Ala., 168 F.3d at 410.

Where the alleged basis for federal jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, the removing defendant has the burden of demonstrating that there is (1) complete diversity of citizenship and (2) an amount in controversy greater than $75,000.[1]  See 28 U.S.C. § 1332(a); Triggs v. John Crump Toyota,

---

[1]   Defendants have made a showing sufficient to establish, and the Authority does not contest, that the amount in controversy exceeds $75,000.  However, the Authority contends that Waste Away, an Alabama corporation, was properly joined as a defendant and,

6

Inc., 154 F.3d 1284, 1287 (11th Cir. 1998); Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996), abrogated on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).  For complete diversity of citizenship to be present, "every plaintiff must be diverse from every defendant." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1564 (11th Cir. 1994).

Notwithstanding the requirement of complete diversity in cases removed under 28 U.S.C. § 1332, "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006).  In such an instance, "[t]he plaintiff is said to have effectuated a 'fraudulent joinder,' and a federal court may appropriately assert its removal diversity jurisdiction over the case."  Id. (internal citation omitted). "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs, 154 F.3d at 1287.

Under Eleventh Circuit precedent, a defendant seeking to demonstrate fraudulent joinder has the burden to prove the existence of at least one of the following three situations.  "The

---

therefore, complete diversity of citizenship between the parties is lacking.

first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." Id. (citing Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983), superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993)).  "The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts."  Triggs, 154 F.3d at 1287 (citing Coker, 709 F.2d at 1440).  The third situation, which was identified by the Eleventh Circuit in Tapscott, is "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant."  Triggs, 154 F.3d at 1287 (citing Tapscott, 77 F.3d at 1360).  "The defendant must make such a showing by clear and convincing evidence."  Henderson, 454 F.3d at 1281.  The removing party's burden "is a 'heavy one.'" Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A Dec. 1981)).

The Court must evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve any uncertainties about applicable state substantive law in favor of the plaintiff.  Crowe, 113 F.3d at 1538 (citing B, Inc., 663 F.2d at 549).  The Court's inquiry must be "based upon

the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). Although "'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b),'" the Eleventh Circuit has stressed that "the jurisdictional inquiry 'must not subsume substantive determination' . . . [and that] federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538 (quoting B, Inc., 663 F.2d at 549 n.9, 550). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

III. **DISCUSSION**

**A.    WM Mobile Bay's Principal Place of Business is in Mississippi.**

As noted *supra*, the Authority contends that diversity of citizenship does not exist because, regardless of whether Waste Away was fraudulently joined, the complaint alleges that WM Mobile Bay's principal place of business is in Alabama, and "[t]his allegation has not been disputed by Defendants." (Doc. 8 at 3). For purposes of diversity jurisdiction, "a corporation shall be

deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is the "nerve center" or "the place where a corporation's officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010). That "nerve center" will normally be "the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination[.]" Id. at 93. The party asserting diversity jurisdiction has the burden of persuasion and, "[w]hen challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." Id. at 96-97.

Here, Defendants' notice of removal states that "WM Mobile Bay is a foreign corporation, incorporated in the State of Delaware and having its principal place of business in Madison, Mississippi, that is qualified to do business in the State of Alabama." (Doc. 1 at 2). In its response in opposition to the Authority's motion to remand, WM Mobile Bay attaches the March 20, 2017 affidavit of its vice president, David Myhan. (See Doc. 11-1). In his affidavit, Mr. Myhan avers that WM Mobile Bay's principal place of business, and "the actual center of WM Mobile Bay's direction, control, and coordination is 382 Galleria Parkway, Suite 107,

10

Madison, Mississippi." (Id. at 2-3). Attached as an exhibit to Mr. Myhan's affidavit is the business entity record from the Alabama Secretary of State, which lists a Madison, Mississippi principal address for WM Mobile Bay. (See id. at 5). The unchallenged Myhan affidavit suffices to demonstrate that WM Mobile Bay was incorporated in Delaware and has its principal place of business in Madison, Mississippi, not in Alabama, as alleged by the Authority. Thus, WM Mobile Bay has met its burden of establishing that it is a foreign corporation for the purposes of the diversity analysis.

**B.  Eleventh Amendment Immunity.**

The Authority further argues that it is an independent instrumentality of the State of Alabama and, therefore, entitled to Eleventh Amendment immunity. (Doc. 8 at 10-15). WM Mobile Bay counters that the concept of Eleventh Amendment immunity is not applicable to this case because the Authority, the party claiming immunity, is the plaintiff. (Doc. 11 at 8-9).

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has construed the Eleventh Amendment "to establish that an unconsenting State is immune from suits brought in federal courts

by her own citizens as well as by citizens of another state."
Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990)
(citations and internal quotation marks omitted).

In the early Supreme Court case of Cohens v. Virginia, 19
U.S. 264 (1821), the Court ruled that a suit filed by a state in
its own courts, and then removed to federal court, is not a suit
"commenced or prosecuted against" that state.  The Supreme Court
stated:

> To commence a suit, is to demand something by the
> institution of process in a Court of justice; and to
> prosecute the suit, is, according to the common
> acceptation of language, to continue that demand.  By a
> suit commenced by an individual against a State, we
> should understand process sued out by that individual
> against the State, for the purpose of establishing some
> claim against it by the judgment of a Court; and the
> prosecution of that suit is its continuance.  Whatever
> may be the stages of its progress, the actor is still
> the same. . . . If a suit, brought in one Court, and
> carried by legal process to a supervising Court, be a
> continuation of the same suit, then this suit is not
> commenced nor prosecuted against a State.  It is clearly
> in its commencement the suit of a State against an
> individual, which suit is transferred to [federal]
> Court, not for the purpose of asserting any claim against
> the State, but for the purpose of asserting a
> constitutional defence against a claim made by a State.

Id. at 408-09.  Based on that reasoning, the Court found that the
Eleventh Amendment "extended to suits commenced or prosecuted by
individuals, but not to those brought by States."  Id. at 407.
See also Ames v. Kansas, 111 U.S. 449, 470-72 (1884) (holding, in
a case concerning whether the Supreme Court's original
jurisdiction in actions involving states is exclusive of

jurisdiction in the lower federal courts, that where a state is suing parties who are not other states, the original jurisdiction of the Supreme Court is not exclusive, and that those suits "may now be brought in or removed to the circuit courts [now district courts] without regard to the character of the parties"); Illinois v. City of Milwaukee, Wis., 406 U.S. 91, 100 (1972) ("adher[ing]" to the ruling in Ames).

In a more modern case, the Second Circuit, after reviewing in detail Cohens, Ames, City of Milwaukee, and other extant case authority on this issue, held that "sovereign immunity does not preclude the removal to federal court of a suit filed by a state plaintiff in state court" and noted that its holding was "consistent with that reached by the vast majority of courts to have considered the issue." In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 488 F.3d 112, 119 (2d Cir. 2007). Among the cases cited by the Second Circuit was Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., 625 F.2d 22 (5th Cir. 1980), where the pre-split Fifth Circuit[2] stated: "Of course, the eleventh amendment is inapplicable where a state is a plaintiff . . . ." 625 F.2d at 24 n.6. See also California ex rel. Lockyer

---

[2]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

v. Dynegy, Inc., 375 F.3d 831, 848 (9th Cir. 2004) ("[W]e hold that a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction."); Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co., 359 F.3d 1237, 1240 (10th Cir. 2004) (holding that a "State may not assert its Eleventh Amendment immunity to preclude defendants' removal of the tort action it brought against them in its own courts"); Regents of the Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559, 1564 (Fed. Cir. 1997) (holding that the Eleventh Amendment does not apply to suits in which a state is solely a plaintiff "because the Eleventh Amendment applies to suits 'against' a state, not suits by a state").

In view of the foregoing, the Court concludes that the Authority's Eleventh Amendment immunity argument is without merit. As noted by the Fifth Circuit in Huber, the Eleventh Amendment is not applicable where the party claiming immunity is the plaintiff. Thus, assuming *arguendo* that the Authority were properly considered an arm of the state,[3] the Eleventh Amendment would not

_____

[3] It is noteworthy that in other litigation between the Authority and WM Mobile Bay, courts have determined that the Authority is *not* an arm of the State of Alabama. For instance, in WM Mobile Bay Envtl. Ctr., Inc. v. The City of Mobile Solid Waste Auth., 672 F. App'x 931 (11th Cir. 2016), a panel of the Eleventh Circuit rejected the Authority's argument that, as an arm of the state, it was not a citizen for purposes of diversity jurisdiction. Id. at 934. The Court concluded that, given the Authority's broad

preclude removal of this case to federal court because the Authority is the plaintiff in this action.

### C. Fraudulent Joinder.

Although WM Mobile Bay is a citizen of Mississippi, the presence of Waste Away, an Alabama citizen, defeats complete diversity of citizenship unless Defendants can establish that Waste Away has been fraudulently joined. Defendants do not assert, and the record does not establish, outright fraud in the Authority's pleading of jurisdictional facts. Instead, Defendants base their assertion of fraudulent joinder on their contention that there is no possibility that an Alabama court could find the Authority's complaint sufficient to invoke claims for trespass, conversion, and nuisance against Waste Away. Defendants further contend that there is no joint, several, or alternative liability and that the Authority's claims against WM Mobile Bay have no real connection to its claims against Waste Away.

---

powers and the lack of control over the Authority by the State of Alabama, the Authority was not an arm of the state for purposes of diversity jurisdiction. Id.

Also, in WM Mobile Bay Envtl. Ctr., Inc. v. The City of Mobile, et al., 18-cv-00429-KD-MU, (S.D. Ala. filed Oct. 4, 2018), ECF No. 10, the Authority argued that, as an arm of the state, it was entitled to Eleventh Amendment immunity. Although the Authority is a *defendant* in that case, the Court, in an order dated February 27, 2019, found that the Authority is not an arm of the State of Alabama and, therefore, not entitled to Eleventh Amendment immunity. Id. at ECF No. 43, 50.

###### i. Documents.

In assessing Defendants' assertion of fraudulent joinder, the Court is not bound by the allegations in the complaint and may consider affidavits, transcripts, and other materials that bear on the question of whether there is a reasonable basis for joinder of a defendant.  See Burden v. Gen. Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995) ("[I]n testing for fraudulent joinder the district court in its discretion may 'pierce the pleadings,' albeit in so doing the court should not conduct an evidentiary hearing but, based on appropriate documentation in addition to the pleadings, should instead resolve all disputed questions of fact in favor of the plaintiff."); Green v. Caterpillar, Inc., 2018 U.S. Dist. LEXIS 59888, at *13, 2018 WL 2107217, at *4 (M.D. Ala. Apr. 6, 2018) ("[O]ther federal courts have held that 'where a claim of fraudulent joinder is asserted Federal courts may pierce the pleadings and consider the entire record, determining the question by any means available.'"); Fergerson v. Tennessee Am. Recycling, LLC, 2011 U.S. Dist. LEXIS 147208, at *13 n.3, 2011 WL 6670191, at *4 n.3 (S.D. Ala. Dec. 2, 2011) ("This Court has located implicit — nonbinding — authority for the proposition that a district court may consider evidence other than 'affidavits and/or deposition transcripts,' in its fraudulent joinder analysis, but this evidence should be authenticated.") (internal citation omitted), report and recommendation adopted, 2011 U.S. Dist. LEXIS 147003,

2011 WL 6704015 (S.D. Ala. Dec. 21, 2011); Dickinson v. Terminix

Int'l Co., LP, 16 F. Supp. 3d 1360, 1366 n.3 (S.D. Ala. 2014)

(same); Melendez v. Colorite Plastics Co., 2015 U.S. Dist. LEXIS

150899, at *13-14, 2015 WL 6745841, at *5 (D.N.J. Oct. 19, 2015)

("The Third Circuit further has instructed that a fraudulent

joinder analysis permits a limited consideration of reliable

evidence beyond the pleadings so long as the Court does not risk

crossing the line between a proper threshold jurisdictional

inquiry and an improper decision on the merits. Such evidence may

be found in the record from prior proceedings . . . or in other

relevant matters that are properly subject to judicial notice.")

(internal quotation marks and citations omitted), report and

recommendation adopted, 2015 U.S. Dist. LEXIS 149462, 2015 WL

6755277 (D.N.J. Nov. 4, 2015).

The Authority's complaint references two contracts, neither

of which is attached to the complaint. (See Doc. 1-1). The first

is an October 6, 1993 contract between the Authority and

"Transamerican Waste Services, Inc. (Transamerican) wherein

Transamerican agreed to operate the Chastang Landfill for twenty

years or the life of the landfill whichever is longer." (Id. at

¶5). The complaint alleges that WM Mobile Bay "is the successor

in interest to Transamerican, and currently operates the Chastang

landfill under the 1993 Contract[.]" (Id. at ¶8). The second

contract mentioned in the complaint is an October 1, 2003 lease

agreement between the Authority and Waste Away, "wherein Waste Away leased the Chastang landfill for a term extending until 2038." (Id. at ¶9). The 2003 lease agreement is attached as an exhibit to the Authority's motion to remand. (Doc. 8-2). The 1993 operating agreement was attached as an exhibit to WM Mobile Bay's October 25, 2018 motion to dismiss. (Doc. 3-2).

Under the circumstances of this case, the Court finds it appropriate to consider both contracts, because both are expressly referenced in Plaintiff's complaint and no party has questioned the contents, accuracy, or authenticity of said documents. In view of the foregoing, and the fact that these documents are at the center of the fraudulent joinder determination in this case, it would make little sense for the Court to refuse to consider these documents. In so doing, the undersigned is mindful that when considering a motion for remand, the fraudulent joinder inquiry shall not subsume the substantive determination, and that the Court should not "weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." See Crowe, 113 F.3d at 1538.[4]

---

[4] The Court also considers in its fraudulent joinder analysis the Authority's complaint (Doc. 1-1); the affidavit of Michele Lersch (Doc. 1-5); the trial transcript excerpt from WM Mobile Bay Envtl. Ctr., Inc. v. The City of Mobile Solid Waste Auth., No. 13-cv-00434-KD-N (S.D. Ala. filed Aug. 23, 2013) ("WM Mobile Bay I") (Doc. 1-6); and the affidavit of David Myhan (Doc. 11-1).

### ii. The Viability of SWDA's Trespass, Conversion, and Nuisance Claims against Waste Away.

The elements of a trespass claim in Alabama are: "1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the Res." Borland v. Sanders Lead Co., Inc., 369 So. 2d 523, 529 (Ala. 1979).

The establish a cause of action for conversion, "one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." Vandenberg v. Aramark Educ. Servs., Inc., 81 So. 3d 326, 343 (Ala. 2011) (quoting Crown Life Ins. Co. v. Smith, 657 So. 2d 821, 823 (Ala. 1994)).

Under Alabama law, a nuisance is "anything that works hurt, inconvenience or damage to another. . . . The inconvenience complained of must not be fanciful or such as would affect only one of fastidious taste, but it should be such as would affect an ordinary reasonable man." Parker v. Ashford, 661 So. 2d 213, 217 (Ala. 1995) (quoting Ala. Code. § 6-5-120 (1975)).

Defendants allege that WM Mobile Bay is the operator and manager of the Chastang Landfill, and that Waste Away has no

involvement in the torts alleged in the Authority's complaint. According to Defendants, "not one of Plaintiff's factual allegations involves any conduct of Waste Away." (Doc. 1 at 6). The Court disagrees. In its complaint, the Authority alleges that Waste Away was the lessee of the Chastang Landfill during the relevant time period, and that both Defendants, WM Mobile Bay and Waste Away, and their employees, agents, contractors, and affiliates, committed the actions complained of. (Doc. 1-1 at ¶¶ 9, 12, 16). The Authority further contends that Defendants' actions included physical ingress and egress on the West Tract by persons and equipment, diversion of water onto the West Tract, and the conversion of large volumes of timber and cover dirt from the West Tract for Defendants' own use. (Id. at ¶¶ 12, 16). In addition, the Authority sets forth in its complaint each of the elements of its trespass, conversion, and nuisance claims against Waste Away and WM Mobile Bay. Thus, the Court is left to determine only whether the 1993 operating agreement, the 2003 lease agreement, the affidavits, and the trial transcript excerpt submitted by Defendants establish by clear and convincing evidence that, notwithstanding the allegations in the Authority's complaint, there is no possibility that the Authority can establish a trespass, conversion, or nuisance claim against Waste Away.

In support of its assertion that Waste Away has no involvement in the operation of the Landfill, Defendants contend that "this

Court has already determined that Waste Away is not a party to the Operating Agreement and thus has no operational involvement in the landfill." (Doc. 11 at 6). Defendants attach a section of the trial transcript from WM Mobile Bay Envtl. Ctr., Inc. v. The City of Mobile Solid Waste Auth., No. 13-cv-00434-KD-N (S.D. Ala. filed Aug. 23, 2013) ("WM Mobile Bay I"), which was an action brought by WM Mobile Bay against the Authority for breach of the 1993 operating agreement. Defendants highlight a portion of a ruling by Judge DuBose that states:

> The contract [1993 operating agreement] cannot be modified, except in writing, as signed by both parties, as was pointed out by the plaintiff when I ruled that the 2003 lease was not WM Mobile [Bay] and was, in fact, Waste Away. Waste Away was not added as a party in writing and signed by both parties. So Waste Away is not a party to this contract and is, thus, a third party.

(Doc. 1-6 at 2-3).

As context, Judge DuBose found that in 2003, the Authority entered into a lease agreement with Waste Away, the parent company of WM Mobile Bay, whereby Waste Away leased the landfill for a term ending in October 2038. WM Mobile Bay I at ECF No. 125, p. 5. The lease was part of a bond issue by the Authority in which tax-exempt bonds were issued and the proceeds were used by Waste Away to obtain new disposal cells and liner systems, improve the leachate and methane gas collection systems, and acquire equipment for the landfill. Id. After reviewing the provisions of the 2003 lease agreement and the 1993 operating agreement, Judge DuBose

found that "Section 1.5 of the 2003 Lease clearly indicates" that the provisions of the 2003 lease agreement did not supplant the provisions of the 1993 operating agreement, including the parties' financial obligations.[5]  Id. at ECF No. 125, p. 10-11.  Judge DuBose also found that because there was no modification of the 1993 operating agreement in the form of an agreement in writing signed by each party, as required by Paragraph 7.3 of the operating agreement,[6] the 2003 lease agreement between Waste Away and the Authority did not make Waste Away a party to the 1993 operating agreement.  (Doc. 1-6 at 2-3).

The undersigned is not persuaded that these findings, including the finding that Waste Away is not a party to the 1993 operating agreement, amount to a determination that Waste Away, as lessee, has no involvement in activities at the Chastang landfill.

---

[5]     Section 1.5 of the 2003 lease agreement states:

> The Company and the Issuer hereby acknowledge that the Operating Agreement continues to be in effect and that the Operating Agreement shall continue to be in effect after the date hereof until such time as the Operating Agreement is terminated in accordance with its terms. The Company and the Issuer hereby agree that, to the extent that the terms of this Agreement and the Operating Agreement conflict with respect to the operation of the Existing Facility by the Company or an affiliate thereof, the terms of the Operating Agreement control.

(Doc. 8-2 at 7).

[6]     Paragraph 7.3 of the 1993 operating agreement provides: "This Contract may be modified, amended, discharged or waived only by an agreement in writing signed by each party."  (Doc. 3-2 at 28).

On the contrary, various provisions in the lease agreement suggest that Waste Away does have some degree of authority, operational involvement, and responsibilities relating to the Chastang Landfill. The agreement between the Authority and Waste Away provides for the lease of the Chastang Landfill to finance the cost of an improvement project for the landfill, for which bonds were issued. With respect to the project and bond issuance, Section 3.1(b) of the lease agreement provides:

> (b) The Company [Waste Away] agrees that it will acquire, construct and install, or complete the acquisition, construction and installation of, the Improvements, substantially in accordance with the description of the Improvements prepared by the Company and submitted to the Issuer [the Authority], including any and all supplements, amendments and additions or deletions thereto or therefrom, it being understood that the approval of the Issuer shall not be required for changes in such description which do not substantially alter the purpose and description of the Improvements as set forth in Exhibit A hereto. The Company further agrees to proceed with due diligence to complete the Improvements within three years from the date hereof. The Company shall not make any changes to the Project or to the operation thereof which would affect the qualification of the Project as a "facility" under the Act or impair the exemption from federal income taxation of the interest on the Bonds. In particular, the Company agrees to comply with all requirements set forth in the Tax Agreement.

(Doc. 8-2 at 10-11).

Section 6.1 of the lease provides that Waste Away "shall be permitted to possess, use, manage, operate and enjoy the Project without hindrance on the part of the Authority, subject, however, to all the terms and conditions of this Lease Agreement." (Doc.

8-2 at 18). Section 6.2 not only authorizes, but requires, Waste Away, at its own expense, to "cause the Project to be maintained and kept in good condition, repair and working order" and to "cause to be made all necessary repairs, renewals, replacements, betterments and improvements to the Project as may be necessary so that the business carried on in connection therewith may be properly and advantageously conducted at all times[.]" (Id.). Additionally, Section 6.3 provides that Waste Away "may, at its own expense, make such changes, additions, improvements or alterations to the buildings, structures and other improvements now or hereafter located on the Site as the Company, in its sole discretion, shall determine." (Id.).

Thus, the Authority's agreement with Waste Away provides not only for bond financing, but also for Waste Away to possess, use, make improvements, and conduct activities at the landfill. In view of the foregoing, Defendants have failed to establish by clear and convincing evidence that there is no possibility the Authority can establish a cause of action for trespass, conversion, or nuisance against Waste Away based upon its alleged actions at the Chastang Landfill/West Tract. This is particularly true given that, at this early juncture, it is not clear which activities have been undertaken by WM Mobile Bay, as the operator of the landfill as successor to the operating agreement, and by its parent company, Waste Away, as the lessee under the bond/lease agreement

with the Authority.

The Authority also argues that, in addition to being liable for its own actions, "Waste Away, as the Lessor/Principal, can also be independently liable for the torts of its agents, contractors, and subtenants relating to the activities at the Landfill." (Doc. 8 at 8). WM Mobile Bay counters that Waste Away is the lessee of the Chastang Landfill, not the lessor, and it has no subtenants, and thus any claim against the lessor of the landfill would not be against Waste Away, but against Authority itself. (Doc. 11 at 7).

In Alabama, for a principal to become liable for the alleged intentional torts of its agent, the plaintiff "must offer evidence that the agent's wrongful acts were in the line and scope of his employment; or that the acts were in furtherance of the business of [the principal]; or that [the principal] participated in, authorized, or ratified the wrongful acts." Joyner v. AAA Cooper Transp., 477 So. 2d 364, 365 (Ala. 1985) (internal citations omitted). A trespass action against a principal may be premised totally upon a theory of respondeat superior, where the act was committed by or through an agent, servant, or employee acting within the line and scope of his employment, see Sibley v. Adams, 324 So. 2d 287, 289 (Ala. Civ. App. 1975), cert. denied, 324 So. 2d 291 (Ala. 1975), or upon a theory that the principal took a personal hand in the trespass by directing, aiding, participating

in, or ratifying the trespass committed by that entity's active agent or joint participant. See Burchfield v. Jim Walter Res., Inc., 175 So. 3d 618, 619 (Ala. 2015); see also Tyson Foods, Inc. v. Stevens, 793 So. 2d 804 (Ala. 2000) (affirming jury verdict in favor of adjoining landowners that found agency relationship between food company and hog farmer in an action for nuisance, trespass, wantonness, and negligence against food company and hog farmer).

The Authority has alleged that "Defendants, and their employees, agents, contractors, and affiliates, have trespassed upon the West Tract[,]" by "physical ingress and egress of persons and equipment across the property line" and causing "diversion of water to be directed upon the West Tract." (Doc. 1-1 at ¶12). As noted, the 2003 lease requires Waste Away to "cause the Project to be maintained and kept in good condition, repair and working order," and to "cause to be made all necessary repairs, renewals, replacements, betterments and improvements to the Project . . . ." (Doc. 8-2 at 18). The lease also allows Waste Away to make "changes, additions, improvements or alterations to the buildings, structures and other improvements now or hereafter located on the Site as the Company, in its sole discretion, shall determine." (Id.).

The Court sees no reason why Waste Away cannot be liable for the tortious acts of its employees or agents at the Chastang

Landfill that were within the line and scope of their employment, done in furtherance of Waste Away's business, and/or were authorized or ratified by Waste Away. The Authority has pleaded this theory. The relevant contracts and the affidavits and trial transcript submitted by Defendants fail to establish that Waste Away's employees or agents have no involvement in the landfill, conduct no activities at the landfill, and have no authority over operations or activities at the landfill. Thus, Defendants have provided no clear and convincing evidence that the Authority has no possible cause of action against Waste Away based upon the actions of its employees, agents, or contractors.

It is also possible that Waste Away, which holds possession of the Chastang Landfill pursuant to the lease, may be liable for permitting tortious acts to occur on the landfill premises, even if such acts were not committed by its employees or agents. As it relates to the Authority's nuisance claim, Alabama case law supports this contention. In Tipler v. McKenzie Tank Lines, 547 So. 2d 438 (Ala. 1989), the Alabama Supreme Court stated that "we must look to the particular facts of each case to determine whether the party charged with creating and maintaining a nuisance has engaged in a course of conduct, *or has permitted to exist a set of circumstances*, that, in its natural and foreseeable consequences, proximately caused the hurt, inconvenience, or damage complained about." Id. at 440-41 (emphasis added); see also Abbot v.

_Braswell_, 265 So. 2d 871, 875 (1972) ("Even though Abbot may not have created the condition which caused the nuisance, or even if he created it through an agent . . . , he, nevertheless, could be liable. One who actively continues a nuisance is as much answerable therefor as he who first created it. 66 C.J.S. Nuisances s 85, p. 839. Therefore, the evidence that Abbot failed to abate the nuisance after notice was sufficient for the jury to find him to be liable for all damages accruing for one year next before the filing of the bill of complaint.").

The Authority's complaint alleges that the tortious conduct at the Chastang Landfill/West Tract is continuing. (Doc. 1-1 at ¶¶ 12, 16). Although WM Mobile Bay and Waste Away are separate legal entities, WM Mobile Bay is a wholly-owned subsidiary of Waste Away, and both have authority with respect to activities conducted at the Chastang Landfill. As noted _supra_, there are plainly real questions of fact with regard to Waste Away's involvement at the landfill and its authority over activities at the landfill. However, because this case is due to be remanded, such factual development is properly done at the state court level.

For all the reasons set forth above, the Court finds that Defendants have failed to prove by clear and convincing evidence that there is no possibility that the Authority can establish a cause of action against Waste Away.

### iii. Fraudulent Misjoinder.

Defendants assert an additional theory of fraudulent joinder, contending that Waste Away was fraudulently misjoined because there is no common question of law or fact that connects the Authority's claims against WM Mobile Bay with those against Waste Away. (Doc. 2 at 6). In so doing, Defendants largely rehash the arguments that this Court has already rejected, claiming that none of the elements of any of the Authority's causes of action are applicable to Waste Away, "since it is not the operator of the landfill." (Id. at 6-7).

In Tapscott, the Eleventh Circuit held that where the non-diverse defendant shares no joint, several, or alternative liability with the other defendants, and the claims against the non-diverse defendant have no real connection to the claims against the diverse defendants, a court may find fraudulent joinder and remand the case. 77 F.3d at 1360. The Court cautioned, however, that not every misjoinder under Fed. R. Civ. P. 20 would constitute fraudulent joinder; rather, the misjoinder must be "so egregious as to constitute fraudulent joinder." Id. This type of fraudulent joinder is commonly referred to as "fraudulent misjoinder." See Headwaters, LLC v. Dawes Lake, LLC, 2013 WL 4519198, at *3 (S.D. Ala. Aug. 26, 2013).

In the instant case, Defendants cannot meet their heavy burden of establishing fraudulent misjoinder. There is clearly a real

connection between the Authority's claims against WM Mobile Bay and Waste Away. The Authority alleges that WM Mobile Bay, the operator of the Chastang Landfill, and Waste Away, the lessee of the landfill, committed acts of trespass, conversion, and nuisance. The tortious acts alleged originated from the Chastang Landfill and impacted the adjoining West Tract. The Authority's claims against Defendants assert joint and several liability, arise from the same series of occurrences, and involve common questions of law or fact, including whether the entire landfill facility consists of only 367 acres, as the Authority alleges. (See Doc. 1-1 at ¶5). The alleged injuries to the Authority are also the same – damage to the West Tract and interference with the Authority's use and possession of the West Tract. (See id. at ¶¶ 14, 18, 20-21). Simply put, Waste Away was not misjoined, much less egregiously misjoined. The Court finds that Defendants have not met their burden to establish fraudulent joinder and, accordingly, this case is due to be remanded to the state court where it was originally filed.

## IV. CONCLUSION

For the reasons stated above, the undersigned concludes that Defendants have failed to establish by clear and convincing evidence that Defendant Waste Away Group, Inc. was fraudulently joined, as necessary to support federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, it is RECOMMENDED that

Defendant Waste Away Group, Inc.'s motion to dismiss fraudulently-joined defendant (Doc. 2) be **DENIED**, that Plaintiff's motion to remand (Doc. 8) be **GRANTED**, and that this action be remanded to the Circuit Court of Mobile County, Alabama, pursuant to 28 U.S.C. § 1447(c).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made,

state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **6th** day of **August, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**